22-313. Good morning. Good morning, Your Honor. Good morning. May it please the Court, my name is Alexandra Shapiro and I represent Appellant Stephen Calk. This appeal arises from an unprecedented use of the federal bank bribery statute. Appellant was convicted of bank bribery for loans that were ultimately the most profitable in the history of the bank that he and his brother owned, even though he believed the loans, which were all made on standard or better terms, were in the bank's best interest. Look, if somebody gives somebody $500,000 in bribe to make a loan, does it matter if a loan is a good loan? I mean, this case is very different and there are many problems, but you're saying these were good loans and therefore. And I'm just wondering, if I were to bribe a bank officer $500,000 to make a loan, does it matter whether that loan is good or not? No, Your Honor, that's a very different case and that's not our claim at all. The point here is that that wasn't remotely what happened here and we have two arguments. The first one is that the alleged bribe was not a thing of value within the meaning of the statute to begin with. And I was about to get to that and if I may, I'll continue with that. The alleged bribe here was a mere referral for a courtesy interview that led to no job offer. A referral of the sort the government's own witnesses at trial testified was regularly given for free. And Congress set careful limits on the scope of Section 215 to ensure that it doesn't criminalize common interactions and exchanges between bankers and their customers. And the facts proven at trial do not remotely approach those limits. Unlike in any prior bank bribery cases, the thing at issue here had no objective value. Unlike in prior cases, the benefit Mr. Koch received had no value to either- Now, again, is your argument that it must be something that has monetary value or that intangibles can also be a bribe? That is, the argument could be that here there was no evidence of the value, and that's one argument, as against the notion that intangibles may not count. We are not arguing that intangibles don't count. So let's understand. One, the fact, the duty argument that if you're getting a good loan you're okay is not what you're arguing. Nor are you arguing that intangibles can't be. You're arguing that in this case there was no evidence of what the value of what was given, what the quid for the quo was. We are arguing that. We are also arguing that to the extent it's an intangible, there has to be some sort of objective indicia of value. You mean some method of evaluating it objectively? Some objective method? Some sort of objective method, and it doesn't have to be particularly complicated. For instance, in a number of cases it's easy to figure out because you can say the parties agreed on a value. So, for instance, someone exchanged $500 for a conjugal visit or what have you. That's a subjective value, at least to that person who receives. You could say it's subjective, but it's based on an agreement between the parties. There's an objective element to it. There's an objective element to it. Well, you're saying it may be the subjective valuation, but we can put a specific measurable economic value. The evidence can be put in to show a specific measurable monetary value. Correct. Right. Other people pay this much to do this. You could do that. So, for instance, if in this case if Mr. Manafort was a paid recruiter and typically charged a certain fee for making this type of referral, that would be a very different case as well because there you would have some sort of objective indicia. But here there was no such evidence. So the government obviously points to the fact that your client paid $1,800 to travel in connection with this interview. So it was worth at least that to him. What's your response? Why isn't that the sort of indicia of value that you're talking about? I respectfully submit that really has nothing to do with the value of the referral. What it has to do with the value of is the value of the flight and the hotel. Just totally hypothetically, the interview was fairly far away and I'm prepared to pay $20,000 for that interview and to fly out there. Why isn't that some measure of the value subjectively and objectively for the reasons that we've just mentioned of the interview? Well, Your Honor, first of all, I don't think there's any case in any context where something like that has been found and indeed- I agree, I agree, but I think this is a slight extension. The reason, Your Honor, would be this. Let me just give another hypothetical. Suppose Mr. Kalk wasn't able to obtain a flight because the flights were all sold out. Or suppose you have a person who couldn't afford the flight, but instead they decide to drive from Chicago to New York. And that costs almost nothing, right? Maybe a little gas. How is that an appropriate measure of how much it was worth to the person? If anything, one could easily argue that it must have been worth a lot more. Is it part of your- Well, but there's, I think you have an argument even before that. Because it may well be that the interview was worth a certain amount to your client. And therefore, that he was willing to spend $1,600 or $2,000 to go. But that doesn't mean necessarily that the referral for the interview was worth that much. That's correct, Your Honor. And it's that which is the quid for the quo. So we've got to find some way, the government has to find some way, of saying that it was the getting of Mr. Matford doing this that was worth that to him rather than the interview. And that's a more complicated- there may be evidence, but that's more complicated. That's exactly correct, Your Honor. And indeed, there was evidence that Mr. Kalk obtained similar recommendations from other people who had connections to the incoming administration who were also assisting him in this process. But that is exactly- and also the evidence showed that Mr. Matford at this point had very little influence. And indeed, Mr. Scaramucci testified that he set this up just as a courtesy and he didn't expect Mr. Kalk to get the job. Can I ask counsel- I mean, it sounds a little like a 401 objection. Did you- that the evidence of the flight and the transportation bears no relevance, has no propensity to prove the fact of the- and I think it's absolutely right. The question is what is the thing of value that the government was trying to prove. As I understand it, it's the position on the campaign committee and the assistance getting the interview. And as Judge Calabresi has articulated, it seems like as a logical matter, what the flight and the logic goes to is neither of those things but the value to him of the interview. And so that evidence seems to be arguably irrelevant. So I'm curious whether you made a relevance objection to that evidence. Your Honor, I didn't try the case, but I don't believe that objection was made. But I also just- even as to the referral, I would respectfully submit it's not an appropriate measure because on that theory, if he happened to live down the street, it would be worth nothing. So it just seems like it's an inappropriate way to measure it. And as the Fourth Circuit held in the Tillman case, the court shouldn't use things that are only at best tangentially related to the thing at issue. But the question is even if we leave out the 1600 and so on, and this is what I'll ask the government, are there other indications that this- that getting this interview, that getting this guy to say I will get you the interview was something worth more than $1,000 to him? Your Honor- Is there any evidence of that sort in the record? There is none. 1600 might not be it, but is there something on which a jury could so find? No, Your Honor. Your Honor, and indeed if you look at the district court's Rule 29 motion, the only thing the district court relied on was this argument. Right, but the government did argue it's the risk value of the risky $16 million loans. And I think the- so then kind of the- what specifically you're arguing about think of value I think really matters because as the government concedes I think in its footnote or admits in its footnote, it's very difficult to put a specific monetary value on what that risk amount is. And so is that an argument that difficulty in valuation precludes a finding as a matter of law of a value over $1,000? Or could I think as the government argued to the jury, and as they're at least arguing that footnote here, the jury could use its common sense to conclude that a highly risky $16 million loan, whatever it's worth, it's sure worth more than $1,000. No, Your Honor. I disagree for two reasons. One, they could have put in- tried to put in evidence, you know, for instance from an expert to try to make an argument like that. They didn't. And the evidence in the record shows that of course the loan had- these loans had risk, but that was because of the type of loan they were. They were the- Well, but can the government rely on all the things your client did, which seemed to violate the rules of how you were supposed to handle these loans? Let me finish to show that this was a matter of value. That's the question for me. Now, this is different from saying whether the loan is good or bad matters, but whether he was doing things, which is the claim of corruption after all, that were sufficiently different from what you do that a reasonable person could say, this must have been worth a lot to this guy. No, Your Honor, because the evidence doesn't support that in the least. The evidence shows that Mr. Koch, that each of these loans was approved by the loan committee, which consisted of three people subject to underwriting. The underwriter testified unequivocally that he was not influenced by Mr. Koch. He did not- Mr. Koch did not direct him to do anything. It doesn't matter whether they were influenced by that. No. But what matters, because we're trying to find the value to Mr. Koch. I understand, Your Honor, but- We're trying to find the value to him. And the fact that the loan may have been independently valued as being good, if what he did was things which were inappropriate and risky- But I guess what I was trying- I'm sorry. My question is, is that evidence? I guess what I'm trying to say, Your Honor, with all due respect, is that the record doesn't support that he did anything different. And I think in that respect, the terms of the loans are important. They were standard terms for this type of loan. And indeed, in one case, the origination fee was 1% higher than standard. At every turn when Mr. Manafort asked for a special concession, in one case, the return of a $60,000 fee for a prior loan that Mr. Manafort decided not to take. In other cases, an application fee and a request to take some of the $150,000 early for the construction loan, the bank said no. This is very different from any other- But again, you are going to what Mr. Manafort got. What we're asking is what was in Mr. Cox's mind when he was doing this and whether that is evidence of the value of this to him. Because just as the $1,600 is irrelevant, I believe, so it is not irrelevant if he was willing to do things which turned out to be okay but were not okay at the time he did it in his mind because that would be evidence of value. I'm not sure. Believe me, I'm not. Essentially, I'm also asking this for the government to answer on that. I would say two things, Your Honor. One, I would say the record doesn't support that. But I think also it's important to keep in mind that these are two distinct elements. Thing of value is one element, and then there's a separate element that requires the government to prove that Mr. Cox acted corruptly and with the intent to influence. And those latter two, indeed, are two separate elements. Can I ask, back to the thing of value where Judge Calabresi was asking, we have a 215 case, the McElroy case. I'm sorry, which one? The McElroy. We don't have a lot of 215 cases, but we have that one. As I understand it, just factually, that's two people at two different banks. I'll give you an unencumbered loan. You give me an unencumbered loan. What's the thing of value there? The difference there was that, as I recall the case, there was evidence in the record that each of them couldn't have gotten the loan from their own bank and that they were improvident loans, and they hid them from the Board of Directors. So that goes to corruptly, presumably. But what's the thing of value? Well, that wasn't actually litigated in the case. The defendant didn't argue that there wasn't a thing of value.  And why each of them wouldn't have gotten the loans if the other one hadn't cut the special deal would support it. But to be clear, the appellant- So it's either the value of the loan or the risk of the loan. But the appellant didn't argue that the evidence was insufficient as to thing of value or that there was an improper instruction on it. So in fairness, it really wasn't addressed or decided by this court in McElroy. So you said something that there was no expert testimony with respect to the risk. The argument made on submission, as I understand it, as I've gotten to hear, was both with respect to the $1,800 amount and also the risk associated with the loans. And that's worth a lot. You don't have to put a precise value on that risk, but you know that it's more than $1,000. And that, I take it, rests on some lay testimony about the riskiness of the loans, that everyone at the bank knew the loans were risky and they wouldn't have made it without Mr. Conn. Wasn't there evidence of that? No, I don't- Non-expert. I don't think that's fair, Your Honor, except to the extent that, of course, these loans were risky. They were portfolio loans. Well, unusually risky, I guess is the- But there wasn't really testimony of that. And, in fact, Mr. Brennan- When you say really testimony, there wasn't really- There wasn't testimony to that effect. Mr. Brennan, the underwriter who wrote the memos approving the loans, was very unequiv- sorry, not approving the loans, but with the underwriting, was very clear in his testimony that his memorandums were accurate. They were not, he didn't write them the way he did because he thought that's what Mr. Koch wanted to hear. Would you agree, because I'm focused on the risks, although I'm a little still focused on the valuation in connection with the travel. Would you agree that if these were truly unusual loans that represented a significantly higher risk to the bank than was ordinarily the case and that the bank would ordinarily take on, that that might be a basis for determining that it's a thing of value and satisfying that element? I think it depends on the evidence, and I think the government has to come forward with concrete evidence essentially showing that this borrower got some kind of a break that was out of the ordinary. No, I'd like to stop even before. Would you agree that if in terms of what Mr. Koch was doing, he was urging loans which he thought were risky and dubious, then that is evidence of the value to him of what he was doing and therefore value of the quid for the quo. That the fact that the loans ultimately turned out in the eyes of other people is not as relevant because we're not interested in that. Because a $500, $1,000 bribe would be fine, would be a violation even if a loan was a good loan. What is important is in the mind of the briber of what it is and whether that's a sign of value. Now, I don't know whether this evidence is enough for that, but I think when you concede that that's the question, that the question is what is in value in your client's mind? Respectfully, no, Your Honor. I don't concede that. I think it's incorrect as to thing of value. I think that what is in his mind is certainly relevant to the mens rea element that, as I mentioned earlier. But in terms of thing of value, Congress was very clear in the text of the statute that this has to be an objective measure. That's inconsistent with your answer to Judge Calabresi's initial question, which is if I hand a bag of cash in a McDonald's bag of $500,000 in exchange for the assistance or in exchange for a loan, right? If it's money paid in exchange for a loan, then it doesn't matter if the loan ends up being good. What that value does, that measuring value of money shows us is what the person valued the assistance at. Well, I think the reason that it's a little different is that in that example, it's what two people have agreed, number one. And so it's not just what's in the head of the person giving the bribe in that example, because you can see what is going back and forth. And we actually asked for an instruction that said if it's a value that's agreed upon by the parties. But I think it's very important to keep the mens rea element separate. Congress was clear in the two textual provisions that we've emphasized, that it really has to be something that you can put a specific dollar value on. And the legislative history of this statute shows. The question is, is this other actions, are these other actions evidence of a specific dollar value? I'm not disagreeing that Congress wanted a specific dollar value. The question is, are some things that this guy did in this case sufficient evidence of dollar value? No, Your Honor. The answer is no. And your answer is very stubborn in this case. My answer is no. There's no evidence here. I mean, we might have a different case if this were. And this case is really unique. It's unprecedented. It's outside the heartland of bank bribery cases. And I know my time is up, but I just want to make one final point, which is that in a typical case what's going on, and this is where I think is critical, the legislative history makes clear that what Congress wanted to limit the statute to circumstances where the officer was essentially betraying the interests of the bank. No. No. You're going back and denying what I asked at the beginning. The officer is not going against the interest of a bank if he accepts $500,000 for a loan that is good. But that's not what happened in this case. I understand and argue this case, but don't keep coming back to something which is not the right argument. My point is simply this. There's no case like this where both the quid and the quo are so insubstantial, and Congress amended the statute precisely to avoid an overbroad interpretation that could lead to criminalizing trivial and everyday interactions in this particular context, which is private business people and their customers where it's common for this sort of thing to be exchanged. I don't disagree with that. Can I ask one question on the grand jury? So I see in the cases this language sole or dominating as the test, and I've read your brief and the amicus brief arguing that the fact of a superseding indictment should not be dispositive. I still find myself, there's sort of a bunch of factors swirling around here, the timing, what the government asserts in its declaration. I have trouble kind of knowing really how to apply the test and what matters. I mean we're at some level where it almost feels like we need like a McDonnell-Douglas burden shifting or something like that. But what do you think, how do you give explanation to how to apply the sole or dominating test? Well, I think unfortunately it is a matter of examining the particular facts in the case, and as this court has said, the timing is critical. So I've got the same question. I'm sorry. How do we analyze this on appeal? Right. This court has said that it's more exacting scrutiny than clear error or abuse of discretion, but it's not quite to the level of plenary review, so it's somewhere in the middle. And I think here that one of the key factors- What does that mean? Well, your Honor- That's why we get paid the big bucks. It means you have to take a rigorous look- I get paid as much as she does. I didn't write the test, but I think it means you have to take a more rigorous look at the record, that it is kind of a fresh look, and that if the district court just simply essentially accepted what the government said, that's not enough, and this court has to look behind that. But should it be an evidentiary hearing? I mean, should the declarant be crossed in some way? It's a little hard to know how to get around a declaration. It's a declaration put in by the government, and it says, look, I understand the timing issue. We've got a perfectly good explanation for it, and on its face, that's a rational explanation. How do we say, well, yes, it's a rational explanation, but that wasn't really what was motivating the government? Well, I think here you have a series of very unusual factors in terms of the timing and this pattern in which the government had on three prior occasions served a trial subpoena on this witness and asked him to meet with them, and he refused each time. And it's just clear from the face of it that they could have gotten the superseder earlier. They could have gotten the superseder without him. He really provided no evidence. They have an explanation. So my colleague referred to McDonnell Douglas, and I was thinking about that's it. You've got an affidavit, and the district court credited the affidavit, and who are we on appeal to second-guess that? And I understand that there's a- Well, the district court didn't actually. I think typically the reason this court defers to factual findings, and I don't think this is a factual finding. It's really kind of there's a mix of fact and law. But the reason this court defers to findings typically is because the district court, for instance, will hear testimony, can observe the demeanor, is closer to- If I may, if a district court simply says there is an affidavit and that's enough, then we can say that's error. If a district court looks to the affidavit and what's behind it, and we say, well, it is the district court's discretion in this at some point, then that's all right? I don't think so, Your Honor. And I think in the Simel's case, for instance, the government put in an affidavit asserting that there was a proper purpose, and this court didn't accept that. Well, just a plain statement, we say it's okay, can't be enough. There has to be a judgment by the district court that there's something to that. But I respectfully submit, I mean, you can read the opinion that there's not really any- Wasn't there, it was the lawyer was busy, the assistant was busy, so didn't have time to do it before, and the judge said that doesn't rise to the level. But that also just goes to why they didn't seek the superceder before. And we're not saying that there was a problem with getting the superceder. Our point is you can't use that as an excuse to prepare trial testimony. That's well settled. Your point is it's a pretext. It's a pretext, exactly. Yeah, I appreciate that. Yeah, okay. All right, well, you've reserved some time for rebuttal. Thank you. We'll hear from the government. May it please the Court. My name is Paul Monteleone. I represent the government on appeal, and I represented the government at trial. I'd like to start with the thing of value. What defense counsel says is that this case had a very unusual combination of insubstantial quid and insubstantial quo. We think that is absolutely incorrect. That is not what the record showed. It does have a quid and a quo that don't have very neat price tags on them. But both the quid and the quo in this case were incredibly important. The quo was $16 million of highly risky loans, which were pushed through in a highly irregular way. Defense counsel's characterization of the record I'd like to respond to in a moment. I'll get to that. So is the value $16 million? Well, you know, the face value of a loan is not exactly something that you can use if it's going to be repaid. So it's the value of the risk on the loan. Right, so it's the value of the risk on the loan. And that's part of the value of the risk, which is what these banks, investment banks, look at. It's the value of the risk of the loan. Right. And if we were looking at, if we were asking the jury to put a dollar value on what was the value of the risk on the loan, then there wouldn't have been the type of evidence. You tend to put in an expert that provided some valuation. Am I right that you noticed an expert? There was an objection in Lemonet, and the court permitted it, but you didn't put it on? So the expert that we decided not to put forward was actually on the value of the quid, which is consideration at extremely high levels for, you know, positions running the Department of the Army. Yes, there was an additional expert who we didn't call at trial, but we considered. We believed, you know, we put forward a streamlined approach. And I do want to get to these travel costs and connect up one or two things that I think the court didn't see before that. Wait. Loans are risky. Yes. Banks are in the business of making risky loans. If you don't make enough risky loans, it's not doubling often enough in bridge. Some loans fail. You do it. That's what it's about. The question has to be whether this guy was doing something which was out of line and from his point of view was doing something, was taking a risk, was giving something of value. In the bank, it has to be something that an objective evidence of what subjectively he was doing to bribe. And what I want to know is where you point that out. Yes. That is a great question, Your Honor. There are numerous instances that the defendant was aware that he was taking on risk and that he took actions. Not just risk, but a risk that is outside of the bandwidth of risk that the bank usually takes on. Okay. Highly irregular actions. Paul Manafort asked for a loan saying that he needs to pay off a $2.5 million additional mortgage. He actually then calls back and says, oh, I forgot. I need an extra million dollars. It's an extra $3.5 million. Everyone else at the bank was astonished by this. Kalk approved that day the $1 million extra loan amount without seeking any additional collateral. There were two instances that we highlighted in our closing of key reversals. When right before the- But so just to cut to that evidence of the extra risk of the loan and the risk of the loan. And the jury then says, well, high dollar loans, some amount of extra risk, must be over $1,000. Is that the argument? Or do you have somebody who says, well, difficult to put a specific number, but no matter what, it's over $1,000. You don't have that. We do not have an expert or someone giving that piece of opinion. I think that given the $16 million, given the extreme degree of the irregularities, the inference that it could be, the inference that that value was over $1,000 is well within- That was a summation? Yes. That was the entire summation? Well, that was one part of our summation. I mean, except for the $1,850, which was a lot of the- Well, yes. So look, there were again and again, there were irregularities where he was violating the bank's policies by not recusing himself. He was hesitating in certain key moments. And then he had these reversals, which we highlighted in our summation. How do we know what that value- I mean, that he did some things which were improper- I'm sorry. There was evidence that he did on which the jury could find, which goes to the corruption side, but can also go to the notion that he was doing something that had value to him. But how do we put a value on that value is my question, my problem. Yes, I think that putting the value of exactly what that value is is not doable. Saying that it's over $1,000, I think that you can do based on the amount of the loans, the amount of his bank's assets that he's putting at risk, common sense, and the high degree of irregularity where the underwriter testified that COC was the only reason that these loans went through. The loan officer stood to make a commission. He also wanted the loans to go through. But no one else at the bank in the approval chain actually wanted these to go through. We walk through that in the end of the summation. There's extensive evidence that he was bending over backwards to push these through, well aware of the risks. But I do want to get to the travel costs because I think the court asked some questions about connecting it up. There's two connections. One is what connection do the travel costs have to the interview? And the second is what connection does the interview have to Manafort's assistance? Well, the first question is what is the government's argument? What did you argue to the jury the thing of value is? It was Manafort's assistance. Okay. And that assistance. That's always what we're going to be looking at. Yes. So the question is, is there an available inference from the travel costs as to that? But we're not looking at the value of the interview. Right. But the assistance resulted in several things that were clearly valuable to him. One, unilaterally, it resulted in the position on the Trump campaign, which was clearly of great subjective value to him. But we're not even trying to add that into the travel costs. But that's not it. The question is, what is the value of Manafort's assistance? And the fact that he had was – that there was value in getting the job, that there was value in getting the interview, all of that is there. But the question is, what is the value of getting Manafort's assistance? And there, I must say, I have to come back to what you were talking before because I find it very hard to give any weight to whether he spent $1,600 or $1,800 to go from Mouse Cars to Block Cars. Well, so I will agree that that is not in any way the true measure of what this is worth to Kalk. It was a tiny little lower bound that we put forward before the jury because it's actually a very clear cut that the interview would not have been granted but for Manafort's assistance. There was evidence from Anthony Scaramucci. He was asked, why did you give him the interview? Because Manafort asked him to. There were other recommenders. They came after Kalk was talking to Manafort. There's evidence that Manafort actually asked Kalk. And that just means that anything he paid after that has no value to the assistance. He got the interview from the assistance. So if he gets a hotel and an airplane and a haircut and a new suit and a shoeshine, what does that tell us about the thing that he already got, about the value of the thing he already got? He's obviously not going to enjoy the benefit of the interview if he can't go and attend the interview. And he's not going to be able to do it if he's not going to be able to attend the interview if he's not doing it on the schedule of the interviewers. Excuse me. But isn't that, in fact, giving that to the jury confusing the jury? That is, I'm not saying that they said that that should be excluded. But if they had, I think it probably is the case that that ought to have been excluded from the jury because it isn't relevant, which is the point that Judge Nathan said earlier about was there an objection made to the irrelevance of that being brought in at all. Can I? I apologize, Your Honor. Can I try to connect up why it is relevant? We think that it is very clearly relevant, but I may not have done a good job of explaining. The interview was only provided but for the assistants. But Kalk couldn't attend the interview unless he spent this money in the travel costs. All right? And so we know that if he didn't want to pay $1,800 at least for the interview, he would have just not gone. And the fact that it didn't go into Manafort's pocket doesn't matter. If you imagine, let's say a different scenario. Let's say it's a war-torn country. There's some type of checkpoint. He had to go through a checkpoint and get shaken down by someone else for $1,000 to attend the interview. You can still say the interview must have been worth more than that to him because he wouldn't have paid it otherwise. Yes, the interview precisely, the interview. Right, but the interview was a but-for result of the assistants, which is the bribe. And that's the thing we need to value, not the interview. We're right, but since the assistants produced the interview as a but-for cause, we know that it's valuable to him at least as much as the interview along with all the other things that he paid. No, no, because it may be that Manafort's help in that is of trivial value. And so the interview is a huge amount. That is, I may have paid X amount of money to Schmanafort to get me the interview, and Manafort's help was worth $0.05 to me. But the evidence is that it wasn't because Anthony Scaramucci said that Manafort was the reason for the interview. So that's the but-for cause. That's what the trial evidence showed. In some other way, you could imagine a scenario where Manafort actually wasn't relevant to the interview. His assistance wasn't useful. I mean, defense tries to trivialize this as some phone calls and some text messages. That's how influence is created. Let me ask it with a hypo. Let's say I paid two people for assistance, $100 to person one, $100 to person two. Person one makes the call. Person two doesn't make the call. So person one's the but-for call. What we know, I think, is that I valued person one's assistant at $100. That I paid somebody else $100 doesn't say what I valued person one's assistant as, even though it's the but-for cause. Tell me why that's the wrong way to look at it. Well, because person two's assistance is not connected in the causal chain to enjoying the fruits of what person one's giving you in the way that the travel costs are connected in the chain to enjoying the fruits for what Manafort gave him. Manafort getting him an interview that he can't attend is not useful. That's a distinction, but I still don't see the logical inference to saying what I valued person one's assistance in getting the interview. Well, I mean, so if person one's assistance is the only reason that he got the interview, which is what the evidence is, then the full value of the interview is attributable to person one's assistance because that's where the interview came from. Manafort gave him the interview. He didn't give him the job. He didn't get the job. But the interview itself was valuable to him. Let's just take it a little bit more simply. Suppose that these bones, that all that this guy did was absolutely ordinary, that there was some corruption in a different sense, but that that was all that there was, and then that he spent $1,600 or whatever to go to the interview. Would we conceivably say that that said that Manafort's help in getting the interview was worthwhile? That is, your only connection keeps coming back to what it was that he did in pushing these loans, and that is evidence of the value. The rest you put in because it says the interview was worth something, but we all know that. But I think you're undermining your own case in a way by pushing that rather than on focusing of just how much getting Manafort to step in and do for him was worth it as manifested in what he did with respect to these loans, whether the loans were good or not. We meant them to be independent theories. We presented them to the jury as independent theories. We present them to you as independent theories. I'm not trying to let the focus on one dominate the other. We think that both of those are ample reasons. Well, it was footnote four, so the other dominated, and it's not discussed in the district court opinion. Well, it's true it's not discussed in the district court opinion. It was before the jury. It's a grounds for affirmance. It's certainly not a big – as the evidence is very substantial that there were these irregularities that those were motivating to him. Let me ask you, did the other side object to this evidence being brought in? I don't believe they did, Your Honor. I didn't go back and look since that question was raised, but I don't believe that they did. The one other thing that I'd like to say, defense counsel has made a lot of saying that the quid pro quo, that the costs have to in some way be agreed to by the parties. That's not what the circuit's cases say. It is really subjectively the defendant. That's what Williams, Ostrander, and Rosenthal all say. In fairness, that is one – in many cases, that's what happens. I don't know that I heard counsel say that it must be that. Understood. I just wanted to be clear in case there was any confusion that three binding decisions of this circuit say that it is the defendant's own valuation. It is not a requirement that it be agreed to by the parties. I think there's two threads to that. There's the subjective valuation and then there's the can you put a specific monetary value on it to demonstrate what that subjective valuation was. I think those are distinct pieces. Absolutely, Your Honor. Unless the court has more questions on the thing of value. Is there anything close to this case? On the thing of value issue. I think that McElroy is close, as the court said, where the loans are each the thing of value. Each person is giving a loan to the other person. That's a thing of value. There's a little bit of artificiality. We all know here that these $16 million loans have economic values that are in excess of $1,000. They just do. These are not trivial things. You're appealing to the common sense. Yes. There's common sense. I think that it's an inference that is very easily before the jury on all of this, where you're trading loans for loans, where they're going to be paid off. There's no requirement that the jury then become experts in the time value of money and in discounted payment streams and all of these things. They can look to what's actually being exchanged, how that is interpreted by the parties, and find that we don't know the exact price tag, but we know it's over $1,000. But it can't be the value of the loans. It has to be the behavior of Cork in getting these loans. Absolutely. Yes, Your Honor. It is based on the value of the loans. So I think it's not the value of the loans. Put that aside. Then I think there's two possibilities. There's the value of the risk of the loans, and then there is, as Judge Lillie suggested, the value of the excess risk between these loans and loans that the bank would, under normal circumstances, give. Do you think that – have I identified two differences, and which do you think it is? I believe that it is just going to be the value of the risk on the loans, because that's what's coming out of Cork's pocket. And so we know that that's important to him. But you can also, again – that's what's important to him, and that's what his behavior is showing, is that he's worried about the absolute risk on the loans. But again, the evidence showed these were very far out of the ordinary in terms of his behavior and in terms of the loans themselves. So if this were a loan that was within the ordinary bandwidth of risk that the bank was willing to accept, you would say that that would still qualify as a thing of value for purposes of 215, as opposed to something outside of the bandwidth? That's an ordinary transaction. Well, yes. Is it because it wouldn't have happened otherwise? Well, yes, because it wouldn't have happened but for the bribe, which again, there's evidence of that. That's what Anna Evachnik, one of the people working on the loan, said. That's what the underwriter said. But yes, you could also just look to how far out of the ordinary the loans were, how far out of the ordinary the defendant's actions were. And in all cases, assessed in the context of how much money is at stake especially, the jury couldn't say exactly how much money that's worth. But I think that they could say by common sense it's over $1,000. And in that way, there were all these efforts to circumvent the bank approval requirements. Is that here? Yes, Your Honor. The bank's own policy. So we put in evidence in the – we referred to it in our summation in the breach of duty portion of it, and that referred back to some documents of the bank's policies as well as to the testimony of Blake Paulson, an Office of Comptroller of Currency employee, where he didn't recuse himself from these loans he had a personal interest in. And that breach is what caused these whole loans to happen in the first place. If he had recused himself, no one else would have done them. So it was a violation of the bank's policies. It was a violation of his duties in that regard. And was that argued to the jury? Yes, we said that one of the – we had seven ways in which you knew that he had corrupt intent, and one of those ways was the breach of duty. All this goes to corrupt intent? Yes. Yeah, and that's part of it. And I don't think there's any – at least for me, there's no problem with that. The question is whether it also goes to evaluation. Yes, Your Honor. I mean, that these go to corrupt intent, I'm comfortable with, but does it also go to tell us what this was worth objectively to him subjectively? And – go ahead. So, yes, Your Honor, again, we think that it does. We think that it's not in the sense that the jury can say the absolute value, but I think that in the context of both his actions and of the amount of monies at stake, that it's above a thousand. Is there a case – because I don't think McElroy has a case – where the thing of value issue applies to a similar assessment of risk associated with a loan? I'm not aware of that for thing of value. Certainly profitable loans with no risk can be subject to bank bribery in the penny case, but that's a different point, where you're saying that the risk on the loans was considered in valuing the amount of the thing of value? Is there a case where – because you're asking us to embrace – I mean, you're asking us to embrace two theories. I understand that right now I'm focused on the risk issue and that theory of prosecution. Is there a case where we have used – or any court, frankly, has used the risk associated with a loan to determine that there was sufficient evidence that the $1,000 threshold was satisfied as a thing of value? I'm not aware of that in the loan context, but I think that it falls out very naturally from all the cases like Townsend that say that traditional valuation methods are what the defendant is going out of pocket to obtain the thing. You're saying there may not be a case, but common sense tells us that that is what that value – and so make this the first case. Well, yes, but I think it's consistent with the principle that's laid down in the valuation cases, Townsend and Monteleo. Well, it has to be consistent with the statute. Well, yes. This is a stretch to – stretch – don't worry, don't worry – stretch in the sense that we don't – there is no case that applies to this set of facts, even outside of our circuit. I mean, I will agree that it is an application of venerable principles to slightly new factual context. It's safe to say you spent a lot of time on 1850 and travel costs because – I mean, in your view, this is just a ton of money, so it's clearly over $1,000. But you wanted – you were worried about that, so you want a specific price tag on something. Well, we honestly thought, and we still think, that it's very clean to just – with the two but-for cause connections that we believe are there, that – But you don't need 1850 if you've got some percentage of $16 million, right? Well, right, but the jury isn't asked to assess. This isn't a sentencing. It's sentencing – you know, it's hard to say what the amount is, but the jury isn't asked to assess what's the true value of it. They're just asked to assess, is it over the threshold? So something a little bit trivial, like the travel costs, since even that's over the threshold, we don't have to get to the next thing. I've got to tell you, you did that, but I do think that that was confusing to the jury, and I think that if there was an objection to that, and that objection was denied, we've got other problems, but I don't see that there was an objection to the introduction of that evidence. I mean, I did look to see if there's an objection, and I don't see one either in the transcript or in the eliminating motions. I think it then raises the legal question, which is when you don't have an objection, but the evidence in the appellate court's view is not relevant, does it still come into a sufficiency analysis or not, and if so, how? I don't have an answer to that question. Well, Your Honor, look, I think that if it's not relevant, then it's not going to be sufficient. So it doesn't matter whether it's relevant. In a sense, it doesn't matter whether it's relevant. But, I mean, again, the thing that there is a ‑‑ If it is relevant. Right. So you either win on the relevancy or you don't win on relevancy, but you don't think it matters that a relevance objection was not preserved. I mean, I would not object to you writing an opinion. But I think that ultimately we're going to have to deal with the evidence. Be careful. Maintain your credibility. Yes. If I may have a moment to address the claims of the grand jury, unless the court has any other. Yes. I was going to ask you to do that. Yes. And I will just say, I appreciate it, and when I first looked at this, when I first thought about it in connection with the conversation, I thought, of course, superseding indictment, end of story. That's the clean rule. That's the rule that I'm familiar with. This is a little unusual, I think, in that everything seems to have been done with respect to this particular witness as a way to just lock him in. Your Honor. For trial. We don't agree with that. Your Honor, look, there has been no case, obviously, finding a grand jury subpoena improper that preceded a superseding indictment. And here, there's some very good reasons why this should not be the first. All right. The district court, who had two years of familiarity with this litigation, looked over much more information than courts have relied on in the past to deny it, because not only did the court have the inferences of the timing, not only did the court have the affidavit, but the court also had the transcript of the grand jury appearances, which, you know, in Lyon, the court did not need to look at in order to deny it. Did the district court make any reference to anything other than the affidavit in explaining its position? Yes. Yes, Your Honor. It reviewed the testimony and specifically referenced the questions that we asked that were geared towards the conspiracy charge. And I'd like to address this claim that the defense made that, well, if there's a substantive, why wasn't there a conspiracy? Was this just sort of being held back? Is it a foregone conclusion? Well, not any substantive. A substantive count that requires a quid pro quo with the person who the agreement with is for purposes of the conspiracy. I mean, that's not every substantive count, conspiracy count, but that is, I presume here, why upon superseding you said no different evidence and the like, no additional discovery, no additional time needed. The agreement here for purposes of the conspiracy is with Manafort, who's the other end of the quid pro quo. Right. But so a quid pro quo in the meaning of the substantive, as the silver decision indicates, does not involve an actual meeting of the minds. It can be satisfied entirely by unilateral intent by Calk. And that is how the case was charged and presented. And there's an extra complication here. In this particular case, as the defense has pointed out, Manafort was also defrauding Calk. He was also defrauding the bank. And that is not relevant to Calk's own intent to the unilateral side of the quid pro quo that was implicated by the original substantive indictment. But that is a complicating factor in whether there was a meeting of the minds. It obviously doesn't defeat a meeting of the minds. There's no honor among thieves. It happens sometimes that conspirators will lie to each other about some things. But it requires additional evidence to meet. And there was additional evidence that was gathered. There was additional evidence that was presented to the grand jury. What did the witness provide by way of that additional evidence? Well, not as much as if he had given affirmative answers to the questions that we would ask. But this whole idea that we weren't actually trying to ask these questions to get those answers that defense suggests. I mean, I think I'm just focused on the witness. But maybe it's too narrow a focus. What did he supply? Well, as a board member who could have given us visibility in the board deliberations regarding this loan, which we did not have adequate visibility in otherwise, he could have, if he had been aware of more facts, if he had been told things by Kalk, if he had had any direct contact with Manafort, as would not be crazy for a board member in assessing the largest loan in the bank's history. If he had had any of that, then he could very well have had evidence that bore directly on the meeting of the minds. As it was, what he didn't know. You mean if he had information about Mr. Kalk and Manafort's conversations? Is that what you mean? The statements that Kalk made to him about the loan, about his contact with Mr. Manafort, could absolutely have been evidence of the conspiracy if Kalk had been a little more indiscreet, if he had said a little bit more, if he had said things in suspicious ways that raised timing. There's a lot. I mean, as it was, Kalk's defense and the fact that Kalk had insufficient qualifications giving a motive to the conspiracy, gives some evidence of conspiracy. But one conspirator talking about the subject matter of the conspiracy to a third party is definitely a fertile source of potential evidence about the conspiracy itself. We don't know what, we didn't know when we asked what he would say. Can I ask, just to, So that's really the, I'm sorry. I think that's the point, is that in one sense, speaking of relevance, what actually happened during the grand jury is not all that relevant. It's that you went in thinking that you might be able to get additional information from, what's his name, Mr. Rigby? And it was not all that useful. Is that the argument? The question, is that the argument? Well, I suppose I would say that the answers in the grand jury are not that relevant. I think that if the questions had shown that we had no interest in conspiracy-related matters, So questions, what's your motivation? So how about the questions? Yes, so, I mean, we asked questions that were geared at whether he had had conversations with Manafort, or with Kalk about Manafort, or direct communications with Manafort, that would have absolutely shed light on a meeting of the minds. And if there had been affirmative answers, the questions didn't take that long, but that's because of the nature of the answers. That's because the answers shut it down. If there had been affirmative answers, there would have been fertile grounds for extensive follow-up. Can I step back, and I want to just ask about the law here? Yes. So I understand the test, sole or dominating. Yes, ma'am. So first question, that suggests that the government can have a dual purpose. Yes. So it can include the purpose of preparing for trial. That can be a purpose. It just can't be the dominating purpose. Right. Or certainly the sole. I mean, I think that we were aware it might generate. We didn't know if it would honestly be, we didn't know how valuable it would be. We were aware it might be. He was a potential trial witness. But your basic argument has to be that the district court, having seen that in this context, in concluding that it wasn't the sole or dominant, is not something that we are in a position to reverse. Absolutely, Your Honor. And there have been questions about the burden, whether the burden shifts. I mean, the court's law is that the burden is on the party claiming the abuse of the grand jury, that there's not a shift. It is just the defense's burden. And did they carry it? And here, we submit that the transcript and showing our questioning on its own without any deference, amply shows our purpose to a proper purpose. But certainly, any measure of additional deference that the district court's finding has should be given effect to. I still want to ask a couple more questions about the law. Is there a difference between sole and dominating? Yes, absolutely. You could imagine that there is a subpoena that has nothing to do with a purported superseding indictment. So it would be an error of law if the court asked only if it's a sole purpose? Yes. Okay. So I'm looking at S.P.A. 3. She says the defendant has not overcome the presumption of proper purpose by showing that the subpoena was issued for the sole and dominating purpose of preparing for trial. So, Your Honor, I think that, you know. That's an error. That's, I mean, maybe it's Scrivener's error or, you know, oops error. I don't know what you want to call it. But that's not the correct statement of law. I mean, I think that when we're drafting indictments, and means or. There's a lot of ands meaning or in the law. I know all about it. Was that raised? What? Was that raised on appeal? That wasn't raised on appeal. But if you look at the substance, I think that it's quite clear that the court found that the thrust is that it was not the sole purpose. And that the court also found that it was not the dominating purpose. And I think, and there's an and linking those two sentences. And the court maybe put the and in the wrong place or didn't do it with the or. But I think that the only fair way to read the court's opinion is that the court was absolutely aware of the standard and maybe used imprecise language. Okay. Thank you very much. It's an interesting issue. Oh, hold on one second. We have apparently bored our students. We are losing our students. They have to go back and take an exam. Thank you. Thank you. I just have three quick points, your honors. First, I just want to reiterate that this is actually a case of first impression. This court has never construed the term thing of value as what it means in this particular statute for all the reasons that are. Right, but there's lots and lots of cases construing that meaning, many of which were decided before Congress passed this one. Yes, that's true, your honor. But I think those cases are very old, and they predate the Supreme Court's emphasis on textual, close textual analysis. And as Justice Ginsburg said for the court in the Yates case, in law as in life, the same words placed in different contexts sometimes mean different things. And the Supreme Court has several times affirmed that identical language may convey varying content in different statutes and even in the same statute. Secondly, with regard to the government's claim that these were risky loans and so forth, actually, I think the court should pay notice to the fact that the loan to value ratio was incredibly low for this type of loan. And indeed, if you look at page 449 of the appendix, you'll see that there was over $24 million in collateral for $16 million in loans. So it's just factually not true. And indeed, at sentencing, the district court held on the preponderance standard that the evidence failed to establish the economic value of what Mr. Koch gave to Mr. Manafort. That's at A573. I had forgotten that, yes. And that's why the government focused on this issue about the plane ticket, because they didn't have other evidence. Now, since we're on that, may I ask, did you object to that being brought into evidence? Yes, I was just getting to that. Trial counsel did not object, but the reason for that is that the travel records were relevant to show that Mr. Koch had actually attended the interview. But you can ask an instruction which says you may consider these for this purpose, but not for that purpose. Well, I don't. I'm just asking. That was not requested. However, as I think counsel admitted, my adversary admitted, that if this court determines that they're irrelevant, they can't be the basis for an affirmance of the sufficiency of the evidence of that element. No, no, no. The question is, my question was the opposite, that that might be prejudicial enough so that had you made an objection, it might be that we would say the jury was unduly influenced by something that was irrelevant. But that's- I understand, Your Honor, and I wish I had that additional issue, but I don't. But maybe your best argument is what appears in 571, which is the district court itself, after the fact, seems to cast doubt on the evaluation. That's correct, Your Honor, and I would add that at sentencing, the government actually came up with some theory for calculating the risk based on these other loans that Mr. Manafort had previously had. So it was a more complicated argument, and the district court rejected that. So for all those reasons, the evidence was insufficient, and we would ask that the court reverse. Thank you, Your Honor. Thank you very much. We kept you a long time, but it's an interesting argument. Thank you very much. Thank you.